NO. 07-06-0350-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS


 

AT AMARILLO



PANEL E 



 FEBRUARY 15, 2008



______________________________




JOE ANGEL SALAZAR, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 286TH DISTRICT COURT OF HOCKLEY COUNTY;



NO. 04-08-5792; HONORABLE HAROLD PHELAN, JUDGE



_______________________________



Before HANCOCK and PIRTLE, JJ. and BOYD. (1)



MEMORANDUM OPINION




 Appellant, Joe Angel Salazar, was convicted by a jury of aggravated robbery and
sentenced to fifteen years confinement and a $5,000 fine. Appellant contends the trial
court erred in denying (1) his motion for a mistrial after the State prematurely disclosed two 
photographs to the venire, (2) his request for a bill of exception on the trial court's decision
to deny his motion for a mistrial, and (3) his request to question the excess venire
members remaining after peremptory strikes were taken regarding the State's premature
photographic display. We affirm.

Background


 Appellant was indicted for aggravated robbery and charged with striking an eighty
year old man, Billy Williams, with a shovel and stealing his cash. During the jury
qualification process, but prior to any individual questioning by the district attorney or
Appellant's trial counsel, the State inadvertently flashed two crime scene photographs on
a six by ten foot screen situated in front of the jury panel. One photograph showed an
elderly man with blood running down his face, and the other showed a bloody shovel. The
projector showing the photographs was immediately shut off after the shovel photograph
appeared on the screen. After learning about the public display of the photographs, (2) but
before completion of the general qualification of the jury panel, Appellant requested a
mistrial on the basis that the premature display of the two photographs was highly
inflammatory and could significantly prejudice the jury pool. At that time, the trial court
neither granted nor denied Appellant's motion for mistrial, but instead "deferred" a ruling
on the matter.

 After the completion of the general qualification of the jury panel, but still prior to any
individual questioning by the district attorney or Appellant's trial counsel, the trial court gave
the jury panel the following preliminary instructions: 

 [t]here are a few general principles of law that I would like to review with you
at this time. First is the burden of proof. Burden of proof rests solely with the
State of Texas throughout this trial. Never, at any time, does it shift to the
Defendant. The State of Texas must prove each and every element of the
offense beyond a reasonable doubt. The Defendant is presumed to be
innocent until guilt is established by legal evidence received before you in the
trial of this case beyond a reasonable doubt. The above is part of the
Defendant's presumption of innocence, as I mentioned a moment ago. 
Under our system of law, that presumption of innocence is so strong that
unless the State proves each and every element of this case beyond a
reasonable doubt, the presumption of innocence alone is more than
sufficient for the jury to find the Defendant is not guilty. No proof of
innocence of the defendant is required. The indictment in this case is not an
indication of guilt of the Defendant. It is simply the legal means by which a
person in Texas is brought to trial. The Defendant in this case, the
Prosecution, the public and our system of justice all require that a fair jury,
one without bias or prejudice, and free of opinion as to the guilt or innocence
of the Defendant be chosen here today. A fair jury is one not having heard
any of the evidence, that is not committed to either side. And a fair jury is
one that is impartial to both sides and that can and will follow the law as
given to it by the Court. At this time, the attorneys for each side are going to
ask each of you some questions. . . . The questions are designed to
determine if you can be a fair juror, or whether any bias or prejudice you may
have about the law in this case or the facts as they may be presented to you
will prevent you from following your oath as a juror.


 The State then conducted its voir dire. During its voir dire, the State did not ask any
questions about the public display of the two photographs. At the conclusion of its voir
dire, the State asked the jury panel the following questions and received the following
responses:

 [Prosecutor:] Is there something that I haven't gone over that is just . . . you
are just festering on it, bothering you to the point where you think you should
probably call it to my attention that you shouldn't be on this particular case? 
Anybody have anything here on the front row (and all successive rows) that
you think would cause you any difficulty?


 (No response.)


 [Prosecutor:] Anything else that comes to mind that you feel like that you
need to take up maybe in front of the judge privately?


 (No response.)



 The Appellant then conducted his voir dire. During voir dire, Appellant's counsel did
not ask any questions about the public display of the two photographs; however, she did
explore possible prejudices with the jury panel such as whether the prospective jurors
would be affected if the victim were old versus young. Appellant's counsel also gave a
further explanation of the presumption of innocence and asked certain members of the jury
panel the following questions and received the following responses:

 [Appellant's Counsel:] If you had to vote right now as to whether my client
is guilty or not guilty, and no evidence has been presented, how do you have
to vote?


 [Venire Member:] Not guilty.


 [Appellant's Counsel:] Not guilty, exactly. Because there has not been one
bit of evidence. Nothing I say, nothing [the prosecutor] says is evidence in
this trial whatsoever. Anybody here think that my client, just because he is
sitting here and accused of a crime, ought to be found guilty?


. Appellant's counsel also provided a further explanation of the State's burden of
proof and asked the entire venire the following questions and received the following
responses:

 [Appellant's Counsel:] I want you each to promise me, and answer out, each
of you, will you, throughout this entire proceeding, hear both sides of the
case before making a decision? Answer "yes" or "no."


 [Venire Panel:] Yes.


 [Appellant's Counsel:] Okay. Will you be vigilant and follow the instructions
given to you by this Judge, Judge Phelan, and not allow passion or sympathy
for the age of the victim to affect my client's guilt or innocence? "Yes" or
"no."


 [Venire Panel:] Yes.



 After the conclusion of Appellant's voir dire, the trial court granted a recess while the
parties made their peremptory strikes. Prior to the jury panel being reseated, Appellant
again requested a mistrial. The trial court heard testimony on Appellant's motion for a
mistrial outside the presence of the jury panel. Appellant's counsel called two witnesses,
Yaddell, the attorney assisting with jury selection, and Kevin Davis, the District Attorney's
investigator in charge of the photographic display. Their testimony indicated two
photographs were momentarily flashed on the screen situated in front of the jury panel. 
One photograph showed an elderly man with blood running down his face, and the other
showed a bloody shovel. During the hearing, Appellant's counsel requested that the trial
court allow her to call the excess members of the venire remaining after all peremptory
strikes had been exercised to inquire whether they observed the photographs. The trial
court denied that request and Appellant's motion for mistrial.

 Still prior to the seating of the jury, Appellant's counsel requested the opportunity
to make a "bill of review" by calling all members of the venire not selected as jurors to
determine what they may have seen. (3) The trial court denied that request. At that point,
Appellant's counsel reurged her motion for mistrial and request for a "bill of review." In
response, the trial court gave the following explanation: 

 [t]here was no objection made at the time when it was-which it should have
been. Your first motion should-should have been an objection, then you
should have made a motion to admonish the panel to disregard it. You had
an opportunity to inquire of the panel. You didn't say one word about it to
see if it did affect them. So, we don't know. We are just-we are just
speculating. And for that reason-and I am not going to sit here and listen to
all those jurors one at a time to see whether or not they were inflamed by it,
because I don't think they were. 


 I. First Point of Error - Mistrial


 We review a trial court's ruling on a motion for mistrial under an abuse of discretion
standard. Wead v. State, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004); Murray v. State,
172 S.W.3d 782, 784 (Tex.App.-Amarillo 2005, no pet.). The trial court's decision will be
upheld if it falls within the zone of reasonable disagreement. Wead v. State, 129 S.W.3d
at 129. A mistrial is appropriate only for highly prejudicial and incurable errors, and it is
within the discretion of a trial court to deny a mistrial when an instruction to disregard the
matter would cure any resulting harm. Id. Under certain circumstances, an instruction to
disregard may cure alleged harm arising from actions that purportedly taint a jury venire. 
Id. 

 Where, as here, Appellant's first action was to move for mistrial, the scope of
appellate review is limited to the question whether the trial court erred in not taking the
most serious action of ending the trial. Young v. State, 137 S.W.3d 65, 70 (Tex.Crim.App.
2004). An occurrence that could have been prevented by timely objection or cured by an
instruction to the jury will not lead an appellate court to reverse a judgment on appeal by
a party that did not request these lesser remedies in the trial court. Id. 

 In this case, Appellant's counsel did not make an objection or request that the
venire panel be instructed to disregard the photographs; her sole request was for a mistrial. 
Neither did Appellant's counsel take advantage of her opportunity to question the venire
panel during voir dire to determine whether they had observed the photographs or had
been prejudiced by their premature display. (4) Appellant has not shown the incident was of
such a rare and extreme nature as to result in inherent prejudice, nor has he shown actual
prejudice. It was incumbent upon Appellant's counsel to establish the facts on voir dire,
and "[t]he failure of appellant to so inquire during the voir dire of the jury panel and present
a challenge for cause waives any ground for error regarding the matter." Jackson v. State,
548 S.W.2d 685, 697 (Tex.Crim.App. 1977). 

 Moreover, any prejudice that may have been caused by the premature disclosure
could have been cured by a jury instruction. The disclosure did not explain itself and came
early in the proceedings before the presentation of any evidence or explanation of the
charges against Appellant. More importantly, if venire members observed the
photographs, no one indicated during voir dire that their disclosure would influence their
decision or cause them to be unfair toward Appellant. Rather, the members of the venire
indicated that, if they had to vote during voir dire, they would find Appellant not guilty, and
promised to consider both sides of the case before making a decision.

 In an abundance of caution, the trial court should have instructed the jury panel to
disregard the photographs. That said, however, the trial court did, in its preliminary charge,
instruct the venire on the defendant's presumption of innocence, the state's burden of
proof, and the consequences of the State's failure to prove its case. This is the "functional
equivalent" of the instruction that should have been requested after Appellant's counsel
discovered the photographs had been disclosed. See Reynolds v. State, 686 S.W.2d 264,
267 (Tex.App.-Amarillo 1985, no pet.). Because the functional equivalent of the instruction
necessary to cure the error was given, any prejudice that might have resulted from the
premature photographic display was cured. 

 Appellant's cases are inapposite. In Haddad v. State, 860 S.W.2d 947
(Tex.App.-Dallas 1993, pet. ref'd), the court determined that, even if a single reference to
"organized crime" during voir dire could have been cured by a jury admonition, repeated
references to "organized crime" by the prosecutor throughout the trial could not be cured
by a jury instruction. Id. at 953-54. Here, we have a single disclosure of two photographs
prior to the commencement of voir dire lasting only a few seconds. In LaRosa v. State, 414
S.W.2d 668 (Tex.Crim.App. 1967), the defendant was not permitted to complete his
questioning of all prospective jurors due to an unrealistic time limitation. Id. at 670. Here,
the trial court placed no limitation on the content of questions, or the time within which they
could be asked. The voir dire by the State and Appellant's counsel continued uninterrupted
from start to finish. 

 Accordingly, we find any prejudice that might have occurred from the photographic
display was cured by the trial court's preliminary charge to the jury and the decision to deny
the mistrial fell within the zone of reasonable disagreement. Point of error one is overruled.

 II. Second Point of Error - Bill of Exception

 Appellant contends that, after his motion for mistrial was denied, the trial court erred
by denying his counsel the opportunity to make a bill of exception by questioning the excess
venire members who remained after peremptory strikes had been taken to ascertain
whether they had observed the photographic display. In support, Appellant cites Texas
Rule of Evidence 103(b) for the proposition that his right to create a bill of exception was
mandatory. Rule 103(b) states, in pertinent part, as follows:

 [t]he offering party shall, as soon as practicable, but before the court's charge
is read to the jury, be allowed to make, in the absence of the jury, its offer of
proof. 


(emphasis added.) 


 Under Rule 103(b), a defendant has the absolute right to make an offer of proof or
perfect a bill of exception when evidence is excluded. See Allridge v. State, 850 S.W.2d
471, 496 (Tex.Crim.App. 1991), cert. denied, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68
(1993); Spence v. State, 758 S.W.2d 597, 599 (Tex.Crim.App. 1988). The instant case is
not one in which Appellant has been denied the opportunity to present evidence or preserve
the record, but rather, Appellant complains that the court denied his request to recall certain
members of the venire for questioning. As such, Rule 103(b) does not apply. Mata v.
State, 867 S.W.2d 798, 803 (Tex.App.-El Paso 1993, no pet.). Appellant's counsel had an
opportunity to ask the entire venire questions related to the photographic display during voir
dire, but failed to do so. Point of error two is overruled.


 III. Third Point of Error - Voir Dire

 Appellant contends the trial court erred by denying his request to extend or re-open (5)
voir dire and permit his counsel to question the jury panel remaining after peremptory strikes
were taken regarding the photographic display. He asserts the trial court's denial violated
his federal and state constitutional right to counsel and an impartial jury.

 It is a well-established principle that the conduct of voir dire rests largely within the
sound discretion of the trial court. Woods v. State, 152 S.W.3d 105, 108 (Tex.Crim.App.
2004), cert. denied, 544 U.S. 1050, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005). The 
appropriate standard of review is whether the trial court abused that discretion, Boyd v.
State, 811 S.W.2d 105, 115-16 (Tex.Crim.App. 1991), cert. denied, 502 U.S. 971, 112 S.Ct.
448, 116 L.Ed.2d 466 (1991), and "[t]he appropriate standard of harm is to disregard the
error unless a substantial right has been affected." Woods, 152 S.W.3d at 109-110. 

 Because Appellant's counsel had already been given the opportunity to question the
venire regarding the photographic display and did not, and because the venire's responses
during voir dire indicated no prejudice had resulted and the court gave the "functional
equivalent" of the instruction necessary to diffuse any prejudice that might have resulted in
its preliminary charge, we find the court did not abuse its discretion in refusing to grant
Appellant's request to extend, or re-open, voir dire. Appellant's third point of error is
overruled.

Conclusion


 Having overruled all of Appellant's points of error, the trial court's judgment is
affirmed.

 Patrick A. Pirtle 

 Justice 


Do not publish.

 

 
1. John T. Boyd, Chief Justice (Ret.) sitting by assignment.
2. Appellant's trial counsel, Anna Ricker, was assisted during the jury selection process
by Donny Yaddell, a local attorney. The display was observed by Yaddell while Ricker was
before the bench with her back to the screen. Upon Ricker's return, Yaddell informed
Ricker of the occurrence and she moved for a mistrial.
3. The terms "bill of review" and "bill of exception" are often confused. Although
Appellant's counsel requested a bill of review when the appropriate request should have
been a request for a bill of exception or an offer of proof, we believe that in the context of
the request the trial court was not confused.
4. Appellant's counsel claims that, prior to conducting voir dire, the trial court had left
her with the impression it would be conducting "a full blown hearing on the matter in order
to determine what had occurred" at some later stage of the proceedings. The record does
not support this assertion. The trial court simply deferred making a ruling on the motion. 

5. Defense counsel's request came after voir dire had been completed and peremptory
challenges were submitted to the trial court, but before the jury was seated and the
remainder of the venire dismissed.