

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00540-CR

Ruben **ARCE**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 111th Judicial District Court, Webb County, Texas
Trial Court No. 2012CRM000033-D2
Honorable Mark R. Luitjen, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:        Catherine Stone, Chief Justice
              Marialyn Barnard, Justice
              Patricia O. Alvarez, Justice

Delivered and Filed:  April 30, 2014

AFFIRMED

Appellant Ruben Arce was indicted and found guilty by a jury on the charge of aggravated assault with a deadly weapon and assessed punishment at fifty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine in the amount of $10,000.00.  Finding no merit in any of the alleged complaints, we affirm the trial court's judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.     Jury Selection**

On June 25, 2012, a jury was selected in the aggravated assault with a deadly weapon charge against Appellant Ruben Arce.  The jury was sworn, Arce entered a plea of not guilty to the aggravated assault, and after instructions were provided, the jury was released until the following morning.

On June 26, 2012, the trial court called the matter for trial and Arce was not present.  His attorney announced that he did not know Arce's whereabouts.  The State requested a capias.  The trial court questioned Arce's mother who testified that she had seen him getting ready for court that morning, but that he left the house and she did not see him again.  Arce's attorney confirmed that he spoke with Arce the evening before and Arce had assured him that he would be in court. The trial court issued the capias, denied bond, and recessed for two hours in an attempt to have Arce's family locate him.  After Arce still did not appear, the trial court determined that Arce voluntarily absented himself after pleading to the indictment and the trial proceeded in his absence in accordance with article 33.03 of the Texas Code of Criminal Procedure.  TEX. CODE CRIM. PROC. ANN. § 33.03 (West 2006) ("[W]hen the defendant voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, the trial may proceed to its conclusion.").  The trial resumed and the jury was instructed accordingly.

**B.     Presentation of Evidence**

The State's first witness was the victim Jesus "Chuy" Guerrero.  Guerrero testified that, on October 23, 2010, he was at a party in El Cenizo, Texas where he consumed several beers and used cocaine.  Guerrero left the residence with a friend, Benigno Ayala, and walked to a convenience store.  He and Ayala were talking outside the store when Arce rode up on a bicycle.

Guerrero and Arce had known each other for over fifteen years and Guerrero considered him "a nephew."

Arce circled around Guerrero and Ayala twice. Guerrero and Ayala left the area and began walking down the street when gunshots erupted, approximately five or six shots. Guerrero was struck in the back and the arm. Guerrero turned and saw Arce as the shots continued. Guerrero ran for cover and a third bullet struck him in the leg. Guerrero testified that Arce was the individual who fired the weapon. Ayala was unhurt and fled the scene. He later testified that when he heard shots, he ran for cover, and did not see the shooter.

Webb County Sheriff's Deputy Oscar Silva responded to the call at approximately 11:46 p.m. While waiting for the ambulance, Guerrero repeatedly told Deputy Silva that Arce was the shooter. Officers at the scene retrieved seven bullet casings consistent with a .45 caliber weapon, a beer can, and Guerrero's boot—both of which had been pierced by bullets.

Deputy Jose Mar and Corporal Felix Nunez proceeded to Arce's residence where his mother, Diana Arce, gave consent to search the residence. Deputy Mar testified that he knew the Arce family and knew the Arce family owned a .45 caliber semiautomatic handgun. Deputy Mar further testified that he inspected the weapons cabinet but was unable to locate the .45 caliber handgun. While at the residence, Diana Arce confirmed to the officers that Arce had access to the residence and there was a bicycle at the house. Sergeant Sylvia Morales proceeded to the hospital, but Guerrero was unconscious and could not provide any additional information. Three days later, however, Guerrero again identified Arce as the shooter.

Arce points to the testimony of El Cenizo Fire Chief Juan Gonzalez. Chief Gonzalez testified to overhearing Guerrero tell the deputies that he did not know who shot him, but that a small, gray, four-door vehicle drove near him and he was shot by one of the occupants. However,

when Deputy Silva was asked about the gray vehicle, he did not remember any discussion of a gray vehicle and was adamant Guerrero identified Arce as the shooter.

Attempts by the officers to locate Arce were unsuccessful until approximately six weeks later. When the officers attempted to arrest Arce, he absconded from the police vehicle. He was ultimately charged with escape, evading arrest, and the aggravated assault with a deadly weapon charge. Before trial, Arce entered a plea of guilty to escape and evading arrest.

After two days of trial, the jury found Arce guilty of aggravated assault with a deadly weapon and sentenced him to fifty-five years confinement in the Institutional Division of the Texas Department of Criminal Justice and assessed a fine in the amount of $10,000.00.

In his appeal, Arce raises five issues: (1) the prosecutor's comments during closing argument were calculated to inflame the jurors' conscience, (2) the prosecutor improperly informed the jury of Arce's invocation of his right to remain silent, (3) the prosecutor's comments during opening argument were prejudicial and denied Arce his right to a fair trial, (4) the venire panel was tainted by the comments of a prospective juror, and (5) the prosecutor's improper remarks permeated the entire trial thereby denying Arce a fair trial by an impartial jury. For purposes of this appeal, we address the issues chronologically as they arose and at trial.

### COMMENT BY MEMBER OF THE VENIRE

Arce contends the trial court erred in failing to grant his request for a mistrial in response to comments made by a prospective juror. Specifically, Arce points to the prospective juror opining in open court that Arce appeared to be on serious drugs and the prospective juror's affirmation that she had special qualifications to make such diagnosis.

The Fourteenth Amendment incorporates the essence of the Sixth Amendment right to trial by impartial, indifferent jurors whose verdict is based upon the evidence developed at trial. *See Howard v. State*, 941 S.W.2d 102, 117 (Tex. Crim. App. 1996), *overruled on other grounds*, *Easley*

*v. State*, NO. PD-1509-12, 2014 WL 941451, *3 (Tex. Crim. App. Mar. 12, 2014) (citing *Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) and *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)).

## A.    Standard of Review on Motion for Mistrial

"The conduct of the voir dire examination [lies] within the sound discretion of the trial court." *Mendoza v. State*, 552 S.W.2d 444, 447 (Tex. Crim. App. 1977).  We, therefore, review a trial court's denial of a motion for mistrial for an abuse of discretion.  *See Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004).  Only for highly prejudicial and incurable errors is a mistrial appropriate.  *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *see also Hawkins*, 135 S.W.3d at 77 ("Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required.").

To show harm based on the trial court's denial of a motion for mistrial, a defendant must prove the following: (1) other venire members heard the remarks, (2) the venire members who heard the remarks were influenced by them to the prejudice of the defendant, and (3) the juror in question or another juror with a similar opinion was forced upon the defendant.  *Callins v. State*, 780 S.W.2d 176, 188 (Tex. Crim. App. 1986) (citing *Johnson v. State*, 205 S.W.2d 773, 774–75 (Tex. Crim. App. 1947)).  In the absence of such a showing, no harm to the defendant is shown. *Id.*  In most instances, an instruction to disregard will cure the prejudicial effect.  *Wesbrook v. State*, 29 S.W.3d 103, 115–16 (Tex. Crim. App. 2000).

## B.    Exchange with the Prospective Juror

As Arce points out, the exchange with the prospective juror was quite long and included questions posed before the entire panel.

| | |
|---|---|
| Venire #10: | I think either you're extremely sleepy or you're on some serious drugs. My opinion. |
| State: | Who? |
| Venire #10: | This guy right here (indicating). |
| State: | Oh, okay. |

Venire #10:  So off the bat --
State:  Well, we—yeah.
Defense:  May we approach, Your Honor?
(At Bench, *sotto voce*)

State:  We've never had that happen before. She pointed to the defendant and stated that he's extremely sleepy or he's on drugs.
Court:  She said?
State:  Uh-huh.
Defense:  I move for a mistrial based on that information that Juror Number 10 provided to the rest of the jury panel.
State:  I don't believe that's grounds for a mistrial.
Court:  She's not an expert in any fashion. She works at a customer support.
Defense:  It prejudices the rest of the —
Court:  Huh?
Defense:  Our problem with that is that she may have prejudiced the rest of the venire panel based on that fact alone. Because there's going to be something with regards to both parties being under the influence of drugs, possibly.
State:  She made an observation of the defendant, Your Honor, and nothing more. That was her personal observation.
Defense:  And, Your Honor, she is the one sitting right next to Mr. Arce.
Court:  She what?
Defense:  She's the one sitting closest to Mr. Arce.
Court:  Oh. Okay. I know that. I don't see how that . . .
(End of Bench conference)

Court:  All right. Ms. Martinez.
Venire #10:  Yes, sir.
Court:  You don't have any special training in any fashion to determine what you just said, do you?
Venire #10:  I worked with SCAN, Inc.—
Court:  Huh?
Venire #10:  —and Family Guidance Services.
Court:  What?
Venire #10:  I worked with SCAN, Inc. and Family Guidance Services, which dealt with drugs, alcohol and so forth, so . . .
Court:  But there's no way—you know better than to think that you can just look at someone and decide whether or not they're under the influence of drugs.
Venire #10:  Well, I worked—
Court:  You know better than that, right?
Venire #10:  I worked with Family Guidance—
Court:  Answer my question, ma'am. You know better than to think that you can tell that someone is under the influence of alcohol or drugs simply by looking at them, right?
Venire #10:  Since I dealt with them—

- 6 -

| | |
|---|---|
| Court: | But the answer is yes or no. You know you cannot do that— |
| Venire #10: | Yes, sir. |
| Court: | —simply by looking at them, correct? |
| Venire #10: | Yes, sir. |
| Court: | All right. Any other opinions you might have that are based on nonscientific or unprofessional observation, please keep to yourself. Let's proceed. |
| State: | Thank you. |
| Defense: | Your Honor— |
| Court: | That's denied. |

The record reflects that Arce did not request an instruction to disregard either before or after moving to quash the venire. *See Sanchez v. State*, 769 S.W.2d 348, 353 (Tex. App.—San Antonio 1989, no pet.) (citing *Mendoza*, 552 S.W.2d at 446–47). The trial court did, however, instruct the juror, in front of the entire venire, that the remark was improper and the trial court proceeded to have the juror confirm that her comments were not supported by simply looking at the defendant.

## C.  Analysis

The comment appears to have been heard by the entire panel. *See Pledger v. State*, No. 04–08–00682–CR, 2009 WL 3789607, at *2 (Tex. App.—San Antonio Nov. 11, 2009, no pet.) (mem op., not designated for publication) (noting that appellate court could "infer from the record that other members of the venire heard the [comment] because it was made in open court and was sufficiently audible for the court reporter to record it"); *McGee v. State*, 923 S.W.2d 605, 607–08 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (inferring from the record that other members of the venire heard the remark). Arce, however, has not identified any other juror who had a similar opinion about his guilt, and nothing in the record indicates any other prospective jurors were influenced by the comments. *See McGee*, 923 S.W.2d at 607–08; *Sanchez*, 769 S.W.2d at 352. Arce, therefore, failed to demonstrate that he suffered any harm.

When a defendant fails to show harm, the trial court's ruling will not be disturbed on appeal. *Berkley v. State*, 298 S.W.3d 712, 713 (Tex. App.—San Antonio 2009, pet. ref'd). There is simply no evidence in the record (1) that any members of the venire who heard the comment were influenced by it or (2) that Arce was forced to accept a juror who was prejudicially influenced. *See id.*; *see also Callins*, 780 S.W.2d at 188; *McGee*, 923 S.W.2d at 608. We, therefore, overrule this issue on appeal.

### IMPROPER COMMENTS BY THE STATE

Arce next argues the prosecutor's comments during both opening and closing arguments were improper.

"A timely and specific objection is required to preserve error for appeal." *Luna v. State*, 268 S.W.3d 594, 604 (Tex. Crim. App. 2008); *see* TEX. R. APP. P. 33.1(a) (requiring contemporaneous objection and adverse ruling); *Brooks v. State*, 642 S.W.2d 791, 798 (Tex. Crim. App. [Panel Op.] 1982) (requiring objecting party to (1) make an objection, (2) request an instruction to disregard be given to the jury, and (3) move for a mistrial). When the defendant fails to object to a jury argument or pursue an objection to a jury argument to an adverse ruling, he "forfeits his right to complain about the [jury] argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).

The record reflects that defense counsel neither lodged an objection during either comment nor requested an instruction to disregard. "[A]ny impropriety in the State's argument is waived by a defendant's failure to make a proper and timely objection." *Aguirre v. State*, 683 S.W.2d 502, 508 (Tex. App.—San Antonio 1984, pet. ref'd); *see also Griffin v. State*, 181 S.W.3d 818, 822 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

Even if the errors were such that they could not be cured by an instruction, Arce was required to object and request a mistrial. *Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex. Crim. App.

2002) (declining to overrule *Cockrell v. State* even in light of prosecutor calling appellant a "despicable piece of human trash"). We, therefore, overrule both of Arce's complaints with regard to the State's comments during opening and closing arguments.

### PROSECUTOR'S COMMENT ON ARCE'S RIGHT TO REMAIN SILENT

Arce next argues that the prosecutor improperly informed the jury of Arce's invocation of his Fifth Amendment right and the trial court gave no instruction to disregard. Arce's brief improperly suggests the exchange in question was between the State and Webb County Sheriff Deputy Sylvia Morales. However, as the State points out, the exchange was in fact between defense counsel and Deputy Morales during cross-examination. Because the complained of action was, in fact, questions posed by defense counsel, we overrule this issue on appeal.

### IMPROPER COMMENTS BY PROSECUTOR TAINTED ENTIRE TRIAL

Finally, Arce argues that based on cumulative error, the prosecutor's actions were extremely prejudicial and permeated the entire trial. Specifically, Arce points to (1) the potential juror's prejudicial statement, (2) the statement during opening argument insinuating a witness was being threatened, (3) the cross-examination of Deputy Morales, and (4) the alleged error during closing argument when jurors were asked to deliver a verdict that the community expected and to deliver justice to the complaining witness.

Arce argues the cumulative effect of all of the above alleged errors denied him due process and due course of law. Arce argues that, even if none of the errors alone rose to the magnitude of constitutional breach, the cumulative effect of these constitutional and statutory infringements violates the state and federal constitutions. Having found no such violations, we hold that these claims are without merit. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999) (concluding non-errors cannot cumulatively cause error). Accordingly, this issue is overruled.

**CONCLUSION**

Because Arce failed to show any harm by the allegedly erroneous statements made by the prospective juror, the trial court did not err in failing to grant a mistrial during the voir dire of the case. *Berkley v. State*, 298 S.W.3d 712, 713 (Tex. App.—San Antonio 2009, pet. ref'd).

Even if we assume the complained of statements made by the prosecutor were in error, the record reflects that Arce failed to object or request a mistrial and, thus, waived any complaint on appeal. *Mathis*, 67 S.W.3d at 926–27.

Finally, having found none of the alleged errors alone rose to the magnitude of constitutional breach, Arce's claim of a cumulative effect is of no effect. *See Chamberlain*, 998 S.W.2d at 238.

Accordingly, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH